# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Paul Kozloski, individually, Duke Kasprisin,     Civil No.: 06-0295 (DSD/JJG)
M.D., individually, and Kevin Noyes,
individually,

                    Plaintiffs,

                                                 **REPORT AND**
v.                                               **RECOMMENDATION**

American Tissue Services Foundation,
a Delaware not for profit organization,

                    Defendant.

_____

## APPEARANCES

Scott Johnson and Todd Johnson for Plaintiffs

Natalie Wyatt-Brown for Defendant

_____

JEANNE J. GRAHAM, United States Magistrate Judge

        The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the

District Court on October 10, 2006, on Defendant's Motion for Dismissal and Transfer of Venue (Doc.

No. 17).  The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28

U.S.C. § 636 and D. Minn. LR 72.1.  For the reasons discussed herein, the undersigned recommends

Defendant's motion be granted in part and denied in part.

I.      **Facts as Pled in the Complaint**[1]

Plaintiffs are former executives and employees of Defendant American Tissue Services Foundation ("ATSF").  ATSF is a Delaware corporation that collects and sells human tissue for use in medical research.  ATSF's headquarters were located in Indiana.[2] ATSF maintains an office in Minnesota.

Plaintiff Paul Kozloski is a resident of Minnesota.  ATSF Chairman of the Board, Robert Turner, recruited Kozloski, who began working at ATSF as President and Chief Operating Officer on January 26, 2005.  Plaintiff Dr. Duke Kasprisin is a resident of Vermont.  Kasprisin was recruited by Turner and Kozloski, and began working at ATSF as medical director and director of quality assurance on February 28, 2005.  Plaintiff Kevin Noyes is a resident of Minnesota.  Noyes was recruited by Kozloski and joined ATSF as a divisional director of procurement of tissue on January 26, 2005.  Chairman Turner is also the Executive Director of Lifeshare, an Oklahoma corporation that is registered by the federal government to procure human tissue from donors.  Lifeshare is a major supplier of tissue to ATSF.

The organ and tissue procurement and processing industry is highly regulated by the federal government in the interest of public safety.  Strict quality control requirements are in place.

Between January 26 and May 21, 2005, Plaintiff Noyes became aware of serious quality control infractions by certain persons employed by ATSF in the collection or transportation of human organs or

---

[1]Because Defendant has moved the Court for dismissal under Rule 12(b)(6), the Court will set forth the facts alleged in the Amended Complaint as if true in order to determine whether Plaintiffs have stated a claim upon which relief can be granted.  *See In re Grand Casinos, Inc. Securities Litigation*, 988 F.Supp. 1273, 1275 (D.Minn. 1997) (Tunheim, J.).

[2] Defendant's moving papers indicate the headquarters of ATSF moved to Oklahoma following the commencement of this action.

tissue.  Specifically, Noyes learned from an ATSF employee, Mike Slack, that ATSF employee Hector

Mena, a procurement supervisor at the ATSF office in El Paso, Texas, had been instructed by Slack to

falsify a donor medical record and change the blood type reflected in that record.  In May 2005, Noyes

informed Kozloski of this quality control violation.  Kozloski confirmed the occurrence with Slack, and fired

Slack immediately thereafter.

Kozloski reported the alteration of the blood type to Turner, and told Turner he had fired Slack.

Turner, who is Slack's foster father, was angry at Kozloski for firing Slack.  Turner subsequently hired

Slack at Lifeshare in a quality assurance capacity.  Kozloski also informed Kasprisin of the quality control

infraction.  Over the next few months, Kasprisin reported other quality control assurance irregularities

occurring at either ATSF or Lifeshare.

On June 24, 2005, Kozloski and Kasprisin held a conference call with some of the ATSF

managers around the nation to discuss the issues of quality control that had surfaced and Kozloski's and

Kasprisin's concerns that the infractions must be reported to the Food and Drug Administration ("FDA")

as required under federal law.  Kozloski and Kasprisin told the managers that a letter of disclosure would

be sent to the FDA informing the agency of the irregularities in order to avoid serious consequences to

ATSF in the event the FDA discovered the irregularities without voluntary disclosure.

On June 26, 2005, a detailed letter was sent to the FDA.[3]  Numerous managers at ATSF

requested that their names be included in the letter as disclosing parties, including Noyes, Kasprisin and

Kozloski.  Three days later, Kozloski and Kasprisin met with Turner in Madison, Wisconsin, to discuss

---

[3] A copy of the letter is attached to the Amended Complaint as Exhibit A.

the severity of additional falsifications that had been discovered.  Turner fired Kozloski and Kasprisin at the meeting.  On October 13, 2005, Turner fired Noyes.

Plaintiffs claim their terminations occurred as a direct result of and in retaliation for their reporting to their employer and the FDA concerns about public safety, violations of federal regulations and federal law, and related concerns regarding quality control issues that may directly affect public safety.  The Amended Complaint alleges claims under the Minnesota Whistle Blower statute and common law claims of wrongful termination.

## II.      Discussion

Defendant ATSF seeks dismissal of certain claims pursuant to Rule 12(b)(6), and transfer of the remaining claims to the District Court for the Western District of Oklahoma.  Defendant's motion can be divided into three parts: (1) dismissal of Kasprisin's claims under the Minnesota Whistle Blower statute and Minnesota common law because they do not protect Vermont resident Kasprisin; (2) dismissal of the remaining Plaintiffs' common law claim for wrongful termination because the claims are identical to Plaintiffs' statutory claims under the Whistle Blower statute and a separate common law claim cannot exist under such circumstances; and (3) transfer of the remaining Whistle Blower claims of Kozloski and Noyes to the District Court for the Western District of Oklahoma.  The Court will first address Defendant's requests for dismissal.

### A.      Standard of Review - Motion to Dismiss

Because Defendant filed its motion to dismiss after it filed an Answer to the Amended Complaint, the examination of whether Plaintiff has failed to state a claim upon which relief can be granted should be considered under Rule 12(c) instead of 12(b)(6).  This is because a Rule 12(b)(6) motion is to be filed

4

before an answer has been submitted. *See* Fed.R.Civ.P. 12(b); *Westcott v. City of Omaha,* 901 F.2d 1486 (8th Cir.1990). However, Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" pursuant Rule 12(c) may be advanced in a motion for judgment on the pleadings following the filing of an Answer. Fed. R. Civ. P. 12(h)(2). Therefore, the Court considers Defendant's motion as a 12(c) motion for judgment on the pleadings.

Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir. 2002); *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir. 2001). A court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. *Faibisch,* 304 F.3d at 803; *Potthoff,* 245 F.3d at 715. The court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir.2002); *see Westcott,* 901 F.2d at 1488. The court may consider the pleadings themselves, matters of public record, materials embraced by the pleadings, and exhibits attached to the pleadings. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999).

**B.      Kasprisin's Minnesota Whistle Blower Claim**

Defendant contends Plaintiff Kasprisin's claim under the Minnesota Whistle Blower statute fails to state a claim upon which relief can be granted. Defendant asserts ATSF is not an employer within the meaning of the Whistle Blower statute because it only has a small branch office in Minnesota. ATSF also argues Kasprisin is not an employee within the meaning of the Whistle Blower statute because he is a resident of Vermont and not a Minnesota employee. Defendant contends the Whistle Blower statute does

5

not apply where neither the plaintiff nor the employer has significant ties to Minnesota and all events comprising the claim occurred outside Minnesota.

The Minnesota Whistle Blower statute prohibits an employer from engaging in a retaliatory discharge against an employee who, "in good faith, reports a violation or suspected violation of any federal or state law." Minn.Stat. § 181.932, subd. 1(a). Employee is defined as "a person who performs services for hire in Minnesota for an employer." Minn.Stat. § 181.931, subd. 2. Employer is defined as "any person having one or more employees in Minnesota and includes the state and any political subdivision of the state." *Id.* at subd. 3.

First, Defendant's contention that ATSF is not an "employer" within the meaning of the Whistle Blower statute is without merit. The term "employer" is clearly defined in the statute as "any person having one or more employees in Minnesota" and contains no language exempting businesses with small offices or only branch offices from the statute's application. The Amended Complaint alleges ATSF maintains an office in Minnesota and that ATSF hired Minnesota residents Kozloski and Noyes. Construing all inferences in favor of the non-moving party, the Court concludes the Amended Complaint sufficiently alleges ATSF was a Minnesota employer within the meaning of the Minnesota Whistle Blower statute.

Defendant also argues Kasprisin's Minnesota Whistle Blower claim must fail because Kasprisin is not an "employee" within the meaning of the Whistle Blower statute. Defendant argues Kasprisin is not an employee because he is a resident of Vermont and, thus, not a Minnesota employee. Plaintiffs respond by contending the Minnesota Whistle Blower statute is available to non-residents, and argue the facts alleged in the Amended Complaint support a finding that Kasprisin is an employee under the plain language of the statute.

Upon review of the Amended Complaint, the Court concludes it contains no factual allegations that Kasprisin performed services for ATSF in Minnesota. As a result, the Amended Complaint does not sufficiently allege Kasprisin is an employee within the meaning of the Whistle Blower Statute. Plaintiffs cite their interrogatory responses to support their factual assertion that Kasprisin came to Minnesota on ATSF business. Plaintiffs' interrogatories were submitted by Defendant as an exhibit to the instant motion. However, a careful review of Defendant's memorandum reveals the purpose of inclusion of the interrogatories was to support that portion of Defendant's motion seeking a change of venue. Defendant does not rely upon or cite the interrogatory responses anywhere in its argument for dismissal of Kasprisin's claims under Rule 12(b)(6). Plaintiffs have not themselves pointed to any facts within the pleadings that support their contention that Kasprisin performed work for ATSF in Minnesota, nor directly submitted additional information in support thereof with a request that the Court convert the motion to one for summary judgment. In light of all of these circumstances, the Court declines to consider any matters outside the pleadings, or incorporated therein, in its consideration of Defendant's motion to dismiss and shall not convert the motion to one for summary judgment. *See Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992) (court must convert a motion to dismiss into one for summary judgment when matters outside the pleadings are considered by the court in determining the Rule 12(b)(6) motion).

In sum, a review of the Amended Complaint indicates the presence of facts sufficient to claim ATSF is a Minnesota employer, but lacks factual allegations that Kasprisin performed services for hire in Minnesota for ATSF. The Amended Complaint only alleges that Kasprisin is a resident of Vermont who was recruited by ATSF and began working for ATSF as medical director and director of quality assurance on February 28, 2005. The lack of factual allegations that place Kasprisin physically in Minnesota to

perform services for ATSF is fatal to Kasprisin's claim under the Whistle Blower claim. From its plain language, the Whistle Blower statute protects a person only when he "performs services for hire in Minnesota for an employer." Accordingly, Plaintiff Kasprisin has failed to sufficiently plead a claim under the Minnesota Whistle Blower statute, and the Court recommends that the claim be dismissed.[4]

### C.   Plaintiffs' Common Law Claims

Defendant seeks dismissal of the common law wrongful discharge claims brought by each of the three plaintiffs.

### 1.   Kasprisin's Wrongful Discharge Claim

ATSF next argues Kasprisin's common law claim for wrongful discharge should be dismissed for the same reasons his Whistle Blower claim should be dismissed–i.e., neither Kasprisin nor the events alleged in the Complaint have any connection with Minnesota. The Court agrees. The Amended Complaint fails to allege any connection between Kasprisin, Minnesota, and the alleged wrongs that form the basis of his wrongful discharge claim. The Amended Complaint states Kasprisin is not a resident of Minnesota, and it is devoid of any allegations that he performed work in Minnesota. Moreover, the Amended Complaint does not allege that any of the factual events at the center of this action occurred in Minnesota. The Amended Complaint states the falsification of the tissue records occurred in Texas, and the termination of Kasprisin and Kozloski occurred in Wisconsin.

Moreover, the Court is unpersuaded by the cases cited by Plaintiffs in support of their claim that Minnesota common law applies to non-residents with no connection to Minnesota, finding the cited cases

---

[4] The Court notes the absence of any request from Plaintiffs for leave to amend the Amended Complaint to include specific factual allegations that Kasprisin is a Minnesota employee.

factually distinguishable because each contains a factual circumstance demonstrating a direct connection between a material circumstance of the case with the state of Minnesota; no such connection is alleged in this case.  In sum, the Court finds that Kasprisin has failed to sufficiently demonstrate a legal entitlement to the protections of Minnesota common law under the circumstances in this case.  Thus, the Court recommends the dismissal of Kasprisin's common law claim for wrongful discharge.

### 2.    Kozloski and Noyes Wrongful Discharge Claims

Defendant also argues that the remaining Plaintiffs, Kozloski and Noyes, have failed to state a claim for wrongful discharge under Minnesota common law because there is no such claim as the one alleged by Plaintiffs.[5]  Defendant argues no common law claim for termination in retaliation for "reporting alleged violations" of FDA regulations exists when a Minnesota statute already exists to address that same allegation.  Several Minnesota Supreme Court cases, cited by both parties, are important to the Court's determination of this issue.  Plaintiffs contend Minnesota common law recognizes the co-existence of the Whistle Blower statute and a claim for wrongful discharge, and  assert the relevant case law entitles them to assert their statutory and common law claims in the alternative.  Here, the Court agrees with Plaintiffs.

In June 2006, the Minnesota Supreme Court decided *Nelson v. Productive Alternatives, Inc*. 715 N.W.2d 452 (Minn. 2006).  In *Nelson*, the state Supreme Court considered whether an employee who claimed he was wrongfully discharged from his employment with a nonprofit corporation in retaliation for voting as a member of the nonprofit corporation properly stated a wrongful discharge claim under Minnesota common law.  In order to decide the question, the state Supreme Court had to first decide

---

[5] Defendant includes Kasprisin's common law claim in its argument for dismissal on this ground as an alternative to its previously discussed contentions.

whether the enactment of the Minnesota Whistle Blower statute precluded all common law wrongful discharge claims that are premised on the court's June 1987 holding in *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn.1987).

In its 1987 decision in *Phipps*, the Minnesota Supreme Court affirmed the Court of Appeals' recognition of a common law cause of action for wrongful discharge when the termination was "for reasons that contravene a clear mandate of public policy." *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588, 592 (Minn.App. 1986), *aff'd* 408 N.W.2d 569 (Minn.1987). *Phipps* involved an employee, Mark Phipps, who brought suit because he had been discharged for refusing his employer's order to refrain from reporting the employer's violations of the Clean Air Act. After the Court of Appeals decision, but before the state Supreme Court's decision on appeal, the Minnesota Legislature enacted the Minnesota Whistle Blower Act, providing a statutory exception to the at-will employment doctrine[6] similar to the common law exception in *Phipps*. *See* Minn. Stat. § 181.932.

In affirming the Court of Appeals, the *Phipps* court noted the passage of the Whistle Blower Act, and found Mr. Phipps had stated a viable common law claim for wrongful discharge. The Court found the Clean Air Act is a "clearly mandated public policy to protect the lives of citizens and the environment," and held that "an employee may bring an action for wrongful discharge if that employee is discharged for refusing to participate in activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." *Phipps*, 408 N.W.2d at 571. However, in reaching this

---

[6] Generally, the employee-employer relationship in Minnesota is at-will, meaning that the relationship can be terminated for any reason or for no reason at all. *Anderson-Johanninhmeier v. Mid-Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 273 (Minn. 2002).

10

decision, the state Supreme Court did not address the broader question of whether all discharges in violation of public policy gave rise to a common law wrongful discharge claim.

Moving forward to 2006, the state Supreme Court decision in *Nelson* expressly recognized that some lower courts interpreted *Phipps* as recognizing a common law claim that was exclusively a pre-Whistle Blower Act cause of action, while others held post-Whistle Blower Act common law causes of action for wrongful discharge are entirely precluded by the Act. The *Nelson* Court noted the lower courts making the latter finding did so by reasoning that "once the Minnesota legislature has drawn the line between employment disputes that genuinely implicate public policy and are actionable and those that are not, it is not for the courts to redraw that line." *Nelson*, 715 N.W.2d at 455.

Addressing these post-*Phipps* holdings, the *Nelson* court first found that the Minnesota Whistle Blower Act does not preclude common law wrongful discharge claims, reasoning that the Act should not be interpreted to modify the common law unless the statute does so explicitly, and finding that the Whistle Blower Act does not expressly preclude common law wrongful discharge actions. *Id.* The Court indicated the *Phipps* cause of action has "continuing viability in the common law," *id.*, and stated without objection in a footnote that the continuing viability of the common law claim "may well be largely duplicative of the cause of action available under the Whistle Blower Act." *Id.* at 456, n3.

However, the state Supreme Court, distinguished the holding of *Phipps* and another post-Whistle Blower statute enactment case, *Abraham v. County of Hennepin*, 639 N.W.2d 342 (Minn. 2002), both of which addressed wrongful discharge claims based on termination of employment for refusal to violate the law, from Mr. Nelson's claim that he was discharged in retaliation for exercising his voting rights as a nonprofit member. The Court found that Nelson had failed to state a claim upon which relief could be

11

CASE 0:06-cv-00295-DSD-JJG   Document 46   Filed 12/12/06   Page 12 of 18

granted. In so finding, the Court held there was no clear public policy that supported a common law cause

of action for wrongful discharge for employees who were discharged in retaliation for exercising their voting

rights as nonprofit members, because the Legislature had identified no such clear public policy. In fact, the

Court concluded the language of the statute governing nonprofit corporations did not support such a finding.

*Id.* at 456-57.

> Finally, in a footnote at the conclusion of the written decision, the *Nelson* court stated:
>
> Because we conclude that Nelson's discharge was not a violation of a clear public policy, we need not determine whether Nelson would have stated a viable cause of action for wrongful discharge if his discharge *had* violated clear public policy. Accordingly, we also do not address the broader question of whether other discharges in violation of public policy give rise to common-law causes of action, aside from those that we already recognized in *Phipps*. We do note, however, that this court has generally been reluctant to undertake the task of determining public policy since that role is usually better performed by the legislature.

*Id.* at 457, n.5 (citations omitted)(emphasis in original).

> On the basis of these cases, the Court rejects Defendant's contention that *Nelson* stands for the

principle that the *only* common law wrongful discharge claim in Minnesota is one based on allegations that

termination was in retaliation for refusing to violate the law. Instead the Court concludes the Minnesota

Supreme Court has recognized a common law wrongful discharge claim when a discharge is for a reason

that *clearly* violates public policy. In other words, it is the clarity of the violation of public policy that

defines the existence of the common law claim.

> Although the facts in *Phipps* concerned an employee's refusal to violate the law, the Minnesota

Supreme Court, in finding a viable common law cause of action, recognized that the Clean Air Act is a

"clearly mandated public policy to protect the lives of citizens and the environment," *Phipps*, 408 N.W.2d

at 571. Plaintiff has cited to *State v. Stone*, 572 N.W.2d 725, 731 (Minn.1997). While the factual and

legal circumstances of the *Stone* case are wholly unrelated to the issues before this Court,[7] the commentary of the state's highest court regarding public safety and the state's driving laws is informative.  The *Stone* Court recognized the protection of the safety of persons and property on the roadways is a "general public policy," and emphasized that laws prohibiting drinking and driving reflect a public policy that is "substantially heightened in comparison to the general scheme of driving laws, in that their violation creates a greater risk of direct injury to persons and property."  *Stone*, 572 N.W.2d at 731.

The Court finds *Freidrichs v. Western National Mutual Ins. Co.*, 410 N.W.2d 62 (Minn.App. 1987), a post-*Phipps* case, is also instructive.  In *Freidrichs*, the Minnesota Court of Appeals permitted the common law Whistle Blower Doctrine to apply to an employee who alleged he was fired as a pressure vessel inspector after he refused his employer's requests to refrain from reporting violations of standards that required reporting under the applicable laws.  While the Court of Appeals characterized the factual circumstances as termination for refusal to violate the law, the legal analysis involved the Court's determination that the *Phipps* holding created a "public policy" exception to the at-will employment doctrine, and reiterated the *Phipps* finding that the Clean Air Act is a clearly mandated public policy to protect the lives of citizens and the environment.  *Id.*  The Court then examined the statutes at issue in the case before it, which related to boiler inspection, and determined that "[u]nderlying all of these statutes is an emphasis on public safety." *Id* at 65.  The court thus concluded that "[t]his emphasis on public safety and protection of citizens in this state is a 'clearly mandated public policy.'"  *Id.* (quoting *Phipps*, 408 N.W.2d at 571).

---

[7]*Stone* was a case involving the question of enforcement of state driving laws on members of an Indian tribe when violations occurred within the boundaries of Indian reservations.

Notwithstanding the *dicta* in the *Nelson* footnotes regarding the Court's disinclination to determine what public policy is and is not, in its analysis of the nonprofit statutes at issue, the Court specifically observed that "even those courts that have undertaken the difficult task of judicially delineating a general public-policy exception to the at-will doctrine have required that the public policy at issue be clear in order to justify a common law cause of action." *Id*. at 456 (citations omitted).  Unlike the non-profit statutes at issue in *Nelson*, which clearly did not implicate public policy, the undersigned finds the FDA regulations concerning the safe transfer of tissues from cadavers for use in live patients emphasize the public safety and protection of citizens, and thus encompass *clear* public policy regarding public's safety.

The Court disagrees with Defendant's contention that a specific representation by the Legislature that a statute is intended as clear public policy is required for the statute to support a claim under Minnesota's common law regarding wrongful termination, and concludes no such explicit statement is necessary.  Moreover, the enactment of the Whistle Blower statute by the Minnesota Legislature, which includes a remedy for wrongful discharge based on the conduct at issue in this case, can be interpreted as an expression by the Legislature that such behavior is indeed contrary to public policy.  The FDA regulations clearly fall under what Minnesota cases have recognized as clear public policy of protecting the public's safety.  Plaintiffs' allegations that they were required by law to report the violations to the FDA for ATSF to remain in compliance also bolsters this determination.  In sum, the Court rejects Defendant's hyper-technical reading of the available state cases in an effort to limit the public policy exception to at-will employment to only those terminations that are in retaliation for an employee's refusal to violate the law.  The Court finds Defendant's position misinterprets both the spirit and intention of the Supreme Court's decisions in the *Nelson* and *Phipps* decisions.

14

Clearly, the Minnesota Supreme Court has specifically determined that the Whistle Blower statute does not preclude common law claims for wrongful discharge.  The Minnesota court has identified a public policy exception to the at-will doctrine that forms the basis of a common law claim for wrongful discharge when retaliatory discharge occurs for reasons that contravene clearly mandated public policy.  In the instant case the FDA regulations that prompted Plaintiffs' reporting of ATSF's violation are regulations that encompass clearly mandated public policy regarding public safety.   From these principles and circumstances, the Court concludes Plaintiffs Kozloski and Noyes have sufficiently alleged facts that they were discharged for unlawful retaliatory reasons and have sufficiently alleged common law claims for wrongful discharge.[8]  Accordingly, the Court recommends the denial of Defendant's motion to dismiss as it pertains to Kozloski's and Noyes' common law wrongful termination claims.

**D.   Motion to Transfer Venue [9]**

Defendant also moves this Court for an order transferring the venue of this case from the District of Minnesota to the Western District of Oklahoma.  A district court may, for the convenience of the parties and witnesses and in the interests of justice, transfer venue to any district where the action may have been brought.  28 U.S.C. § 1404(a).

Although a motion for transfer of venue is committed to the discretion of the district court, such a motion should not be granted freely.  It is presumed that the case should be venued in the current forum,

---

[8] The Court also notes Plaintiffs' representation at oral argument that these common law claims are pled in the alternative to Plaintiffs' statutory claims, and Plaintiffs' clarification that, contrary to Defendant's suggestion, they are not seeking a double recovery.

[9] On November 7, 2006, Plaintiffs filed a letter to this Court attempting to supplement the record with regard to their opposition to Defendant's motion to transfer venue.  The Court declines to consider this untimely and unsolicited submission.

and the moving party has the burden to show that a proposed forum would be more convenient. *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997); *Graff v. Qwest Communications Corp.*, 33 F.Supp.2d 1117, 1121 (D.Minn. 1999). Where the proposed forum is more convenient for the moving party, and only shifts inconvenience to the nonmoving party, transfer is properly denied.  But where the proposed forum provides greater access to live witness testimony, and is more convenient to the moving and nonmoving parties, transfer may be granted.  *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F.Supp.2d 1033, 1045-46 (D.Minn. 2001).

Defendant contends Minnesota has no real connection to the case except that two of the three Plaintiffs reside in Minnesota.  Defendant contends the majority of the witnesses in the matter reside in Oklahoma and could not be compelled to come to Minnesota to testify, and that outside of the Plaintiffs, no witnesses reside in Minnesota.  Defendant further argues most, if not all, of the documents relevant to the case reside in Oklahoma and that the operative facts that gave rise to the action occurred in Oklahoma or other southern states.

Plaintiffs argues Defendant's request to change venue is unsupported by the law, which strongly favors a plaintiff's choice of venue.  Plaintiffs contend consideration of the location of the key witnesses that each side will call results in a tie, as the three witnesses expressly identified in Defendant's brief are in Oklahoma, while two plaintiffs are in Minnesota and the third prefers Minnesota as a venue. Plaintiffs argue that Defendant's contention that their key witnesses cannot be compelled to testify in Minnesota is a red herring because ATSF would not fail to call its own key witnesses to testify in its defense at trial wherever the trial may occur.  Plaintiffs point out that while the falsification events occurred in Texas and Oklahoma, the events surrounding the falsification has largely been stipulated to by the parties making the location of

16

the conduct less relevant to the venue analysis. The whistle blowing events, Plaintiffs argue, occurred in Minnesota where the letter was drafted, and Kasprisin and Kozloski were fired in Wisconsin. Finally, Plaintiffs contend the recent wholesale move of ATSF's headquarters from Indiana to Oklahoma demonstrates the ease with which documents can be transported, and that this case is not the kind of case that involves a significant number of documents that would be difficult to transfer.

Upon careful review, the Court finds Defendant's arguments for changing the venue of this matter relate almost entirely to its own convenience, and not to fairness or justice or the convenience of the nonmoving party. Accordingly, the Court finds the Plaintiffs' choice of venue is the proper venue for this action. The Court recommends Defendant's motion be denied to the extent it seeks a change of venue to the Western District of Oklahoma.

## III.    RECOMMENDATION

Based upon the foregoing, and having considered the parties' oral arguments, written memoranda, affidavits and exhibits, and the entire file and record herein, the **IT IS HEREBY RECOMMENDED** that

1.      Defendant's Motion for Dismissal and Transfer of Venue (Doc. No. 17) be **GRANTED IN PART** and **DENIED IN PART**, and that

   a.      Defendant's request to dismiss the claims of Plaintiff Duke Kasprisin be **GRANTED**;

   b.      Defendant's request to dismiss the wrongful discharge claims of Plaintiff Paul Kozloski and Plaintiff Kevin Noyes be **DENIED**; and

        c.        Defendant's request to transfer venue of this matter to the Western District

of Oklahoma be **DENIED**.


Dated: December 12, 2006                    s/Jeanne J. Graham

                                          _____

                                          Jeanne J. Graham

                                          United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by January 2, 2007.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.