UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-295(DSD/JJG)


Paul Kozloski, individually,
Duke Kasprisin, M.D., individually
and Kevin Noyes, individually

       Plaintiffs,

v.                                                           **ORDER**

American Tissue Services
Foundation, a Delaware not for
profit organization,

       Defendant.


     Scott A. Johnson, Esq., Todd M. Johnson, Esq. and Johnson
     Law Group LLP, 10580 Wayzata Boulevard, Suite 250,
     Minnetonka, MN 55305, counsel for plaintiffs.

     Thomas E. Marshall, Esq., Katherine C. Bischoff, Esq. and
     Jackson Lewis LLP, 150 Fifth Street Towers, Suite 1450,
     150 South Fifth Street, Minneapolis, MN 55402, counsel
     for defendant.


     This matter is before the court upon defendant's motion for
summary judgment.  Based upon a review of the file, record and
proceedings herein, and for the reasons stated, the court denies
defendant's motion in part.


**BACKGROUND**

     In this employment dispute, plaintiffs allege that they were
wrongfully discharged in violation of Minnesota common law and the
Minnesota Whistleblower Act.  Defendant American Tissue Services
Foundation ("ATSF") is a Delaware not-for-profit organization with

its headquarters in Indiana.[1]   ATSF is in the Food and Drug
Administration ("FDA") regulated business of harvesting tissue from
human donors that is processed and prepared for human transplant by
an independent company.  ATSF contracted with LifeShare Transplant
Donor Services ("LifeShare"), an organ and tissue procurement
organization, for quality assurance services.[2]  ATSF and LifeShare
also shared certain employees, including Robert Turner ("Turner"),
who was both LifeShare's Executive Director and ATSF's Chief
Executive Officer ("CEO") and ATSF's Chair of the Board of
Directors,[3] and Linda Belcher ("Belcher"), who worked as
LifeShare's Director of Quality Assurance and ATSF's Vice-President
for Quality Systems.  (Turner Dep. at 61-62; Belcher Dep. at 14,
26.)

On January 26, 2005, Turner hired plaintiff Paul Kozloski
("Kozloski") as President and Chief Operating Officer ("COO") of
ATSF.  (Def. Ex. 10.)  Kozloski was in charge of developing the
organizational structure to meet ATSF's goals and running the day-
to-day operations of ATSF, including quality assurance.  (Id.;

---

[1] At all times relevant to this litigation, ATSF had donor
sites in Texas, New York, Wisconsin, Minnesota, Indiana and
California.

[2] These services included reviewing donor charts, managing
errors, writing standard operating procedures and ensuring industry
and regulatory compliance.  (Belcher Dep. at 15.)

[3] Turner stated in his deposition that between January and
June 2005, he spent approximately twenty-five percent of his time
working on ATSF matters.  (Turner Dep. at 61-62.)

Kozloski Dep. at 117.)  Around this same time, Turner also hired plaintiff Dr. Duke Kasprisin ("Kasprisin") as ATSF's Medical Director.  (Kasprisin Dep. at 106.)  Kasprisin's responsibilities initially included only medically related quality assurance but later came to include non-medically related quality assurance. (Id. at 102-03.)  Finally, Turner hired plaintiff Kevin Noyes ("Noyes") on January 12, 2005, as a Procurement Manager for ATSF. (Def. Ex. 11.)  ATSF promoted Noyes to Vice President of National Recovery shortly thereafter.  In that position, he was responsible for oversight of tissue procurement at ATSF's recovery sites.

In May 2005, Noyes reported to Kozloski that Michael Slack ("Slack"), a Procurement Director and foster son to Turner, had instructed Hector Mena ("Mena"), an ATSF employee in El Paso, to falsify a medical record.  (Noyes Dep. at 119-21.)  Kozloski discussed this incident with Kasprisin and decided that if he could confirm Noyes's report, he would terminate Slack.  (Kozloski Dep. at 210-12.)  Before further investigation, Kozloski reported the incident to Turner and told him of the proposed course of action. Kozloski confirmed Noyes's report with Slack and fired him. (Kozloski Dep. at 215-17.)  Turner thought that firing Slack was draconian and immediately hired him at LifeShare in a quality control position that included reviewing ATSF files.  (Turner Dep. at 220-22.)

3

On June 23, 2005, Kozloski and Kasprisin spoke with Turner and Belcher about their concerns with having Slack review ATSF files. During this conversation, Kozloski and Kasprisin noted that they had evidence that Slack's falsification of records was more than an isolated incident.[4]   In response, Turner indicated that he was interested in hearing about all alleged instances of misconduct and supported an investigation into the allegations.   Turner also agreed that Slack would no longer review ATSF files.   (Def. Ex. 13.)   There is, however, no evidence that Turner acted upon or investigated the matter further.

Between June 24, 2005, and June 26, 2005, after not getting the response they wanted from Turner and Belcher, Kozloski and Kasprisin held a series of teleconferences with other ATSF staff regarding the same issues that they had discussed in the June 23 meeting.[5]   Based upon these teleconferences, Kozloski and Kasprisin sent a letter to the FDA on June 26, 2005, reporting their "grave concerns" about ATSF's quality assurance program and requesting an independent audit by the FDA.   (Pl. Ex. F.)   Several other ATSF staff joined this letter, including Noyes.[6]   Lori Shinstine

---

[4] Specifically, Kozloski and Kasprisin referenced other incidents involving road rash fabrication and blood typing discrepancies.

[5] Noyes did not participate in the teleconferences. (Noyes Dep. at 156.)

[6] Noyes did not see the letter before it was sent, although he (continued...)

("Shinstine"), ATSF's Vice President of Education and Development, and Scott Sabo ("Sabo"), ATSF's Vice President of Operations, participated in the June 24 teleconference at which Kozloski and Kasprisin discussed the FDA letter.  Shinstine and Sabo, however, were new to ATSF and did not join the letter.  The next day Shinstine and Sabo called Turner to discuss their concerns about discord within ATSF.  Both Shinstine and Sabo deny telling Turner that Kozloski or Kasprisin discussed sending a letter to the FDA. (Shinstine Dep. at 22-24; Sabo Dep. at 19, 22-26.)

Turner scheduled a June 29, 2005, meeting in Madison, Wisconsin, with Shinstine, Sabo and Jack Boyle from Osteotech[7] to discuss, among other things, Shinstine and Sabo's concerns. (Turner Dep. at 139.)  Kozloski and Kasprisin also went to Madison that same day to discuss quality assurance issues with Turner. Within twenty minutes of arriving at the Madison office, Turner fired Kozloski and Kasprisin.  (Kozloski Dep. at 295; Kasprisin Dep. at 337-38; Turner Dep. at 141-43.)  Nevertheless, Kozloski and Kasprisin remained at the office speaking with Turner for several hours, and in that time, Turner apparently changed his mind and offered Kasprisin his job back.  Kasprisin continued to work for

---

[6](...continued)
supported the "concept" of it.  (Noyes Dep. at 157.)

[7] Osteotech is a tissue processing company that provided major financial support to establish ATSF as a future source of donor tissue.  Jack Boyle was Osteotech's liaison with ATSF.

ATSF for a short time but ultimately left the organization.  There is disagreement about whether Turner also offered Kozloski his job back.  However, Kozloski was indisputably terminated by July 8, 2005.  (Kozloski Dep. at 300-01.)  At no time during the Madison meeting did anyone discuss the FDA letter.  (Kozloski Dep. at 297-99.)

On October 13, 2005, Turner fired Noyes.  Noyes had told Turner that he had not talked to Mena over a particular period of time.  Turner later discovered that Noyes's phone records indicated an eighteen-minute phone call to Mena during that period.  Turner, believing Noyes had been dishonest with him, allegedly fired Noyes because he could no longer trust him.

On January 18, 2006, Kozloski, Kasprisin and Noyes filed an action alleging violations of Minnesota common law and the Minnesota Whistleblower Act stemming from their terminations from ATSF.  ATSF now moves for summary judgment against all plaintiffs.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id.

## II.  Common Law Wrongful Discharge Claim

ATSF argues that the facts of this case do not give rise to a Minnesota common law wrongful discharge cause of action. Separate from the Whistleblower Act, Minnesota courts recognize a cause of action where a plaintiff is wrongfully discharged in violation of public policy. Nelson v. Productive Alternatives, Inc., 715 N.W.2d 452, 455 (Minn. 2006). However, the Minnesota Supreme Court has only found a public policy violation where an employee was fired for refusing to violate a law, regulation or rule. See Phipps v.

Clark Oil & Ref. Corp., 408 N.W.2d 569, 571 (Minn. 1987); see also
Nelson, 715 N.W.2d at 454-56.

Here, plaintiffs claim that they were fired for reporting
potential violations of the law to the FDA and Turner.  They do not
claim that they were fired for refusing to actually violate the law
themselves.  Therefore, because the court will not create a cause
of action not recognized by the Minnesota courts, summary judgment
on plaintiffs' common law wrongful discharge claim is warranted.

## III.  Plaintiffs' Whistleblower Act Claim

Plaintiffs    claim    that    ATSF    violated    the    Minnesota
Whistleblower Act by retaliating against them after they made
reports of ATSF's violations of the law.  See Minn. Stat.
§ 181.932.[8]  The court analyzes a Whistleblower Act claim pursuant
to the method set forth in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).   Under the McDonnell Douglas framework, a
plaintiff must make a prima facie showing that (1) he engaged in a
statutorily    protected    activity,    (2)    he    suffered    an    adverse

---

[8] ATSF argues that the Whistleblower Act does not protect
Kasprisin, a Vermont resident who only visited ATSF's Minnesota
office once.   The Whistleblower Act defines an employee as "a
person who performs services for hire in Minnesota for an
employer."  Minn. Stat. § 181.931, subdiv. 2.  An employer is "any
person having one or more employees in Minnesota."  Minn. Stat. §
181.931, subdiv. 3.   Under a plain reading of the Whistleblower
Act, Kasprisin is a protected employee.  ATSF was an "employer"
under the Act because it maintained an office in Minnesota, and
Kasprisin was an "employee" because he visited the Minnesota office
as a part of his employment and thus "perform[ed] services for hire
in Minnesota for [ATSF]."   Accordingly, Kasprisin may seek
protection under the Minnesota Whistleblower Act.

employment action and (3) there is a causal connection between the two.  See Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1078-79 (8th Cir. 2005); Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

First, "statutorily protected activity" includes reporting in good faith to an employer or governmental body a violation or suspected violation of law.  Minn. Stat. § 181.932; Hicks v. St. Mary's Honor Ctr., 90 F.3d 285, 292 (8th Cir. 1996); Cox v. Crown CoCo, Inc., 544 N.W.2d 490, 496 (Minn. Ct. App. 1996).  The court may determine as a matter of law whether certain conduct constitutes a report under the statute.  Rothmeier v. Inv. Advisers, Inc., 556 N.W.2d 590, 593 (Minn. Ct. App. 1996)(citing Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000)).  Minnesota courts use a common-sense definition to determine whether certain conduct qualifies as a "report."  Gee v. Minn. State Colleges & Univs., 700 N.W.2d 548, 555 (Minn. Ct. App. 2005).  Specifically, a report is defined as "mak[ing] or present[ing] an often official, formal or regular account of [or] ... relat[ing] or tell[ing] about; present[ing]."  Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs, 536 N.W.2d 20, 23 (Minn. App. 1995), aff'd, 552 N.W.2d 711 (Minn. 1996).  Moreover, an employer need not be "ignorant of a suspected violation before an employee makes a report."  Rothmeier, 556 N.W.2d at 593.  Although "good faith" is generally a question of fact, a plaintiff must show that the report

9

was made for the purpose of exposing an illegality to survive summary judgment. <u>Gee</u>, 700 N.W.2d at 555. A court considers the employee's "purpose at the time the reports were made, not after subsequent events have transpired." <u>Id.</u> at 555-56. Moreover, it is not necessary for the employee to state which laws were violated. <u>See</u> <u>Abraham v. County of Hennepin</u>, 639 N.W.2d 342, 354-55 (Minn. 2002). Rather, it is only required that "there is a federal or state law or rule adopted pursuant to law that is implicated by the employee's complaint ... and [that] the employee alleges facts that, if proven, would constitute a violation of law or rule adopted pursuant to law." <u>Id.</u> at 355.

Second, an employee suffers an "adverse employment action" if the "employer's conduct resulted in a 'material change in the terms or conditions of ... employment.'" <u>Lee v. Regents of the Univ. of Minn.</u>, 672 N.W.2d 366, 374 (Minn. Ct. App. 2003)(quoting <u>Ledergerber v. Stangler</u>, 122 F.3d 1142, 1144 (8th Cir. 1997)).

Third, an employee can show a "causal connection" between protected activity and adverse employment action through circumstantial evidence that supports an inference of retaliatory motive. <u>Pope v. ESA Servs., Inc.</u>, 406 F.3d 1001, 1010 (8th Cir. 2005). A showing of temporal proximity between an employee's report and the adverse employment action may occasionally be

sufficient to establish causation; however, something more is generally required. Freeman v. Ace Tel. Ass'n, 467 F.3d 695, 697 (8th Cir. 2006).

Under McDonnell Douglas, if a plaintiff can establish a prima facie case of whistleblowing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employee's termination. Sigurdson v. Isanti County, 386 N.W.2d 715, 720 (Minn. 1986). Once articulated, the burden shifts back to the plaintiff to show that the defendant's non-retaliatory reason is pretextual. Id. A plaintiff can show pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 721.

**A.   Kozloski**

**1.   Prima Facie Case**

ATSF argues that Kozloski did not make a good faith report. Kozloski responds that he made three reports: (1) his oral report to Turner on May 21, 2005, regarding Slack's falsification of records; (2) his oral report in the June 23, 2005, teleconference about the road rash incident and blood typing discrepancies; and (3) the June 26, 2005, FDA letter.

As an initial matter, Kozloski's oral statements to Turner are indeed reports. See Janklow, 536 N.W.2d at 23. The critical issue is whether Kozloski made the reports for the purpose of exposing an illegality. The reports identified discrete incidents of record

11

falsification and suggested a larger pattern of quality assurance problems at ATSF. In the highly regulated tissue procurement industry, ATSF was subject to FDA regulations requiring strict standards of quality assurance. See 21 C.F.R. §§ 1271.160, .270. As President and COO of ATSF, Kozloski's purpose in making these reports may have been to fulfill his job responsibilities. Some evidence, however, suggests that Kozloski's purpose was to expose potentially illegal problems with ATSF's quality assurance. Indeed, sending a letter to the FDA exposing problems with ATSF's quality assurance program and asking for an independent audit suggests that Kozloski's purpose in making these oral reports to Turner was to prevent the release of inappropriate donor tissues. In other words, the letter suggests that Kozloski blew the whistle "for the protection of the general public or, at the least, some third person or persons in addition to the whistleblower." Obst, 614 N.W.2d at 200. Therefore, whether the oral reports are protected by the Whistleblower Act is an issue of fact for a jury to decide.

Additionally, the FDA letter signed by Kozloski was a statutorily protected report. Although Turner knew of some of the letter's content, he need not have been ignorant of the letter's substance for it to have been a report. The Minnesota Supreme Court has held that, in certain circumstances, where an employer or third-party is aware of the suspected illegal activity reported by

an employee, there was no statutorily protected report because the employee's purpose was not to expose an illegality. See Obst, 614 N.W.2d at 202-03. The court was careful to emphasize, however, that "[t]his is not to say that whenever an employer establishes that it or another entity receiving a report of a violation or a suspected violation of law from an employee knows of the violation before the report is made, that the employer can escape liability under the whistle-blower statute." Id. at 203. Where, as here, an employee reports suspected illegal activities to a government agency that had no knowledge of the alleged violations, it is irrelevant whether the employer was aware of the information in the report. Therefore, the court determines that the FDA letter was a report as a matter of law.

ATSF also argues that Kozloski cannot establish that Turner fired him because of any statutorily protected reports.[9] Specifically, ATSF argues that Turner did not know about the FDA letter until after Kozloski was fired and therefore could not have fired Kozloski because of it. There is no direct evidence in the record suggesting that Turner knew about the FDA letter. Kozloski, however, argues that Turner's knowledge can be inferred from his June 24, 2005, conversation with Shinstine and Sabo. Moreover, Kozloski argues that the temporal proximity between sending the

_____

[9] ATSF does not dispute that Kozloski suffered an adverse employment action by being fired.

13

letter and being fired suggests that Turner knew of the letter and fired him because of it.  In the absence of direct evidence that Turner knew of the FDA letter, the court will not infer both knowledge and causation.  Factual issues remain, however, as to whether Kozloski's oral reports are protected under the Whistleblower Act.  If these reports are protected, the temporal proximity between the reports and Kozloski's termination would create a genuine issues of fact as to causation.  See Thompson v. Campbell, 845 F. Supp. 665, 675 (D. Minn. 1994)("The requisite causal connection may be shown circumstantially by proof that [the employer] knew of the protected activity and [the employee's] discharge followed closely in time.").  Therefore, it is premature to conclude that Kozloski was not terminated for engaging in statutorily protected activity.  Accordingly, Kozloski has established a prima facie case under the Whistleblower Act.

### 2.  Pretext

ATSF claims that it had legitimate non-retaliatory reasons for terminating Kozloski's employment.  Turner, on various occasions, alleged numerous reasons: being uncooperative; managing ATSF like the Red Cross; insubordination; and the inability to meet financial and operational objectives.  There is some evidence suggesting that ATSF was having financial difficulties and that Turner was upset with Kozloski's performance.  The evidence also indicates, however, that the proffered explanations are pretextual.  Specifically, ATSF

14

was in its incipiency and Turner did not expect it to be profitable at that early stage.  (Turner Dep. at 154.)  Moreover, Turner never told Kozloski that his performance was inadequate, and ATSF's board of directors never criticized or expressed disaffection with Kozloski's job performance.  Indeed, in his deposition, Turner failed to identify a single example of Kozloski's refusal to cooperate or to specify what objectives Kozloski failed to meet. Because factual issues remain as to whether ATSF's reasons for terminating Kozloski's employment were pretextual, summary judgment on Kozloski's Whistleblower Act claim is not warranted.

**B.   Kasprisin**

**1.   Prima Facie Case**

ATSF argues that Kasprisin did not make a statutorily protected report.  Because Kasprisin participated with Kozloski in the June 23, 2005, teleconference and signed the FDA letter, the court finds, for the same reasons as discussed above, that there are issues of fact as to whether the communication in the teleconference was a statutorily protected report and that the FDA letter was a report as a matter of law.

ATSF next argues that because Kasprisin was rehired shortly after Turner fired him he did not suffer an adverse employment action.  The record shows that Turner terminated Kasprisin's employment at the June 29, 2005, meeting and then offered him his job back at that same meeting.  Kasprisin then continued to work

for ATSF for a short time before leaving the organization. Significantly, it is undisputed that Kasprisin's employment was initially terminated. This is not ameliorated by the fact that he was later rehired. Rather, Kasprisin indisputably suffered an initial adverse employment action.[10] Further, for the same reasons as stated above, the issue of causation is also a matter for the jury to resolve. Therefore, Kasprisin has also established a prima facie case under the Whistleblower Act.

## 2. Pretext

ATSF asserts that it terminated Kasprisin for legitimate non-retaliatory reasons.[11] Specifically, Turner indicated that he fired Kasprisin for making disparaging comments about him and for undermining his authority by, among other things, participating in the June 24-26 teleconferences. Throughout his deposition testimony, however, Turner failed to cogently articulate his reason for firing Kasprisin, or to provide factual support for his

---

[10] Kasprisin also asserts that he was constructively discharged from ATSF after continuing to work for ATSF after the June 29, 2005, meeting. To establish constructive discharge an employee must show, among other things, that the employer created intolerable working conditions "with the intention of forcing the employee to quit." Pribil v. Archdiocese of St. Paul & Minneapolis, 533 N.W.2d 410, 412 (Minn. Ct. App. 2002). There is no such evidence in this case. Therefore, the court determines that Kasprisin was not constructively discharged after he resumed his employment with ATSF.

[11] ATSF maintains that Kasprisin resigned instead of being terminated. As noted above, the evidence shows that Turner terminated Kasprisin's employment and then later offered it back to him.

proffered explanations.  (<u>See</u> Turner Dep. at 104-47.)  Moreover, Turner stated for the first time in a June 2, 2006, letter to the FDA that he terminated Kasprisin's employment because Kasprisin insisted that ATSF implement Red Cross procedures.  Turner also stated in his answers to plaintiffs' interrogatories that he terminated Kasprisin's employment for the same reason as Kozloski's.  In sum, ATSF has offered several reasons for the termination of Kasprisin's employment, all of which have been varied and unclear.  Accordingly, the court determines that there are genuine issues of material fact as to whether ATSF's proffered reasons for firing Kasprisin are pretextual.  Therefore, summary judgment against Kasprisin is not warranted.

### C.   Noyes's Failure to Establish a Prima Facie Case

ATSF argues that Noyes did not make a statutorily protected report.  Noyes contends that he made two reports: (1) his May 2005 report to Kozloski regarding the falsification of records and (2) the FDA letter.

First, similar to Kozloski and Kasprisin, there is an issue as to whether Noyes's May 2005 report was made for the purpose of exposing an illegality.  As Vice President of National Recovery, Noyes was responsible for overseeing tissue procurement.  When he determined that Slack had instructed Mena to violate ATSF's quality assurance procedures, he told Kozloski.  Because reporting this information was a part of Noyes's job duties, this act alone is

17

insufficient to demonstrate reporting for the purpose of exposing an illegality.  However, viewed together with the FDA letter that Noyes attached his name to, there is a factual issue as to whether Noyes's purpose in reporting to Kozloski was to expose an illegality.  Second, ATSF argues that because Noyes did not participate in the discussions or drafting of the FDA letter he did not engage in protected activity.  The court finds that Noyes made a statutorily protected report by affixing his name to the letter.

ATSF further argues that Noyes cannot establish that his employment was terminated because of any statutorily protected reports.[12]  Noyes was terminated five months after reporting the record falsification incident to Kozloski and almost four months after the FDA letter was sent.  Unlike with Kozloski and Kasprisin, a matter of months, not days, separate Noyes's report to Kozloski and his adverse employment action.  Without more, the court will not infer causation.  Moreover, as stated above, the court will not infer Turner's knowledge of the FDA letter and causation without more than the speculation provided by plaintiffs.  In other words, there is insufficient evidence showing that ATSF terminated Noyes for engaging in statutorily protected conduct to create a genuine

---

[12] ATSF concedes that Noyes suffered an adverse employment action.

issues of material fact as to causation.  Therefore, Noyes has not made a prima facie case under the Whistleblower Act and summary judgment on this claim is warranted.[13]

## CONCLUSION

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 86] is:

1.   Granted as to all plaintiffs' Minnesota common law claims.

2.   Granted as to plaintiff Noyes's Minnesota Whistleblower Act claim.

3.   Denied as to plaintiffs Kozloski's and Kasprisin's Minnesota Whistleblower Act claims.

Dated:  September 27, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court

---

[13] Even if Noyes could establish a factual issue as to causation, he has not presented sufficient evidence to show that Turner's reason for firing him was pretextual.  Turner allegedly fired Noyes because he thought Noyes had been untruthful with him regarding Noyes's communications with Mena.  The record shows that Turner did not take any action against Noyes in the five months after he reported the record falsification issue and it was not until Turner had reason to believe that Noyes had lied to him that he fired him.  In addition, Turner has not changed his rationale for firing Noyes.